**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

| | | |
|---|---|---|
| JOHN HARRIS, and AMERICAN NOVELTIES, INC. | * * * * | |
| Plaintiffs | * * | |
| VS. | * * | |
| GEORGE GADD, CHRIS ANDERSON, CHRIS NEEL, SAM PROBASCO, MARK LaCHANCE, and JOHN DOES 1-50, in their individual capacities; and KAREN TANDY, in her official capacity with the Drug Enforcement Administration, | * * * * * * * * | NO: 4:06CV01510  SWW |
| Defendants | * * * * | |

**<u>ORDER</u>**

Plaintiff John Harris ("Harris")[1] commenced this action, *pro se*, against federal and state law enforcement officers and officials seeking monetary, injunctive, and declaratory relief under

---

[1]Plaintiff Harris also names American Novelties, Inc. as a plaintiff in this case. However, American Novelties is not represented by counsel, and a corporation cannot appear *pro se*. *Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996)(citing 28 U.S.C.
§ 1654; *United States v. Van Stelton*, 988 F.2d 70, 70 (8th Cir.1993)).  Accordingly, American Novelties is not a proper party to this action.

42 U.S.C. § 1983, 42 U.S.C. § 1985(3), *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S. Ct. 1999 (1971), and the Arkansas Civil Rights Act ("ACRA").  By order entered April 12, 2007, the Court dismissed all claims against the state defendants, Charles Campbell and Steve Dozier. Now before the Court is a motion to dismiss filed by the remaining defendants, George Gadd, Chris Neel, Sam Probasco, Chris Anderson, Mark LaChance, and Karen Tandy.  Harris has filed a response opposing the motion (docket entry #41), and Defendants have filed a reply (docket entry #43).  After careful consideration, and for the reasons that follow, the motion will be granted and the case will be dismissed with prejudice.

### I.

In deciding  Defendants' motion to dismiss,  the Court must determine whether any of Harris's allegations establish a cause of action entitling legal relief.  *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d. 649, 651 (8th Cir. 1998). The Court must accept the factual allegations in the complaint as true and hold Harris's *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, such liberal pleading standards apply only to factual allegations. *See Neitzke v. Williams*, 490 U.S. 319, 330 n. 9 (1989).  To state a claim for relief, a *pro se* pleading must set forth allegations sufficient to state a claim as a matter of law and must not contain merely conclusory allegations. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### II.  Background

Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, shortitled the Controlled Substances Act ("CSA"), contains a comprehensive regulatory scheme aimed at

preventing the diversion of controlled substances. *See* 21 U.S.C. § 801 (setting forth congressional findings). Under the CSA, any person who distributes pseudoephedrine, a "List I" controlled substance under the Act, must obtain an annual registration from the United States Drug Enforcement Administration ("DEA"). *See* 21 U.S.C. §822(a). A separate registration is required at each principal place of business where the applicant distributes controlled substances. *See* 21 U.S.C. § 822(e).

In 1999, Plaintiff Harris applied for and received DEA registration to distribute List I substances in Arkansas under the name American Novelties, Inc. ("American Novelties"). Harris received similar license to distribute controlled substances from the Arkansas State Board of Pharmacy ("ASBP").

In January 1999, an investigation was underway regarding the reported sale of large quantities of pseudoephedrine tablets at a convenience store in Paragould, Arkansas. *See Ford v. State*, 75 Ark. App. 126, 55 S.W.3d 315 (2001). On September 1, 1999, an undercover narcotics investigator purchased five cases of pseudoephedrine from a store manager, who had purchased the pseudoephedrine from Harris. Subsequently, the store manager was convicted of possession of ephedrine and for being an accomplice to the manufacture of methamphetamine. *Id.*

Harris claims that soon after he received DEA registration to distribute controlled substances in 1999, Defendant Gadd, a DEA agent, and Defendant Anderson, an Arkansas State Police officer assigned to a DEA drug task force, harassed and threatened him in an attempt to force him to voluntarily relinquish his DEA registration. According to Harris, Gadd and Anderson attempted to entrap him, burdened him with requests for records, and made disruptive visits to his place of business. Harris alleges that when he refused to give up his DEA

registration, Gadd and Anderson continued to harass him, and "DEA acts of threats, intimidation and interference with [his] lawful business activities began in 1999 and continued into 2006." Amended Complaint, ¶ 5.

In February 2005, Gadd informed Harris that he possessed sales reports showing that American Novelties sold pseudoephedrine in violation of federal regulations. Harris claims that Gadd threatened that he would initiate federal charges against American Novelties and seek $500,000 in fines unless Harris voluntarily surrendered his DEA registration. Amended Complaint, ¶ 70.

Sometime after Gadd threatened to bring federal charges against American Novelties, Harris filed an untimely[2] application with the ASBP to renew American Novelties' state-issued license to distribute pseudoephedrine. Subsequently, Gadd told Harris that unless he withdrew his application, he would "have the ASBP bring charges against [American Novelties]." Amended Complaint, ¶71.

According to Harris, Gadd enlisted the help of Charles Campbell, executive director of the ASBP, to bring unwarranted ASBP charges against American Novelties. Amended complaint, ¶77. Harris alleges that "as promised by defendant Gadd, the ASBP subsequently filed charges in June of 2005." Amended Complaint, ¶ 72.

Also in June 2005, Harris applied for a modification of his DEA registration to reflect a new business address in Texarkana, Texas. Harris alleges that Defendant Neel, a DEA agent in Texas, told him that based on information he had received from Gadd, he would not approve Harris's request for address modification "at this time." Amended Complaint, ¶ 74. Neel also

---

[2]Harris alleges that he failed to file his renewal application on time because of Gadd's threats. *See* docket entry #–, ¶71.

informed Harris that, in any case, he could not approve his address modification until he received approval from the State of Texas to distribute controlled substances.[3]  Harris claims in July 2005, Texas  approved his application to distribute controlled substances, but because of interference from the DEA, his Texas license was not issued until September 2005.

On March 10, 2006, the ASBP issued findings and conclusions of law regarding the aforementioned ASBP charges filed in June 2005. The ASBP findings state that American Novelties sold pseudoephedrine to customers in suspicious transactions and failed to report said transactions as required under Arkansas law.[4]   The agency denied American Novelties' application for a state licence renewal and imposed  a $188,000 penalty against the business. Docket entry #16, Ex. A.

On March 28, 2006, Harris filed a petition before the ASBP asserting that ASBP relied an unconstitutionally vague state law in making its decision.  Docket entry #16, Ex. B, ¶ 7. Additionally, on April 7, 2006, Harris filed a petition in state court seeking judicial review of the ASPB's decision.  Docket entry #16, Ex. B.  The record contains no information regarding the current status of Harris's petitions for review regarding revocation of his state license.

On October 6, 2006, the DEA issued a show cause order regarding Harris's federal registration.  In the event that an existing registration is proposed for revocation, or that a

---

[3]When an application for modification is received by the DEA, it is handled in the same manner as an application for registration.  *See* 21 C.F.R. § 1301.51.  Before the DEA may register an applicant to distribute a controlled substance, it must determine that issuance of such registration is consistent with the public interest.  *See* 21 U.S.C. § 823(b).  In determining the public interest, the DEA must consider, among other things, compliance with applicable State and local law.  *Id*.

[4]*See* docket entry #16, Ex. A.  The Court may take judicial notice of public records without converting the motion to dismiss into one for summary judgment. *See Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003).

registration or renewal application or modification is proposed for denial, DEA is required to serve an order to show cause on the registrant and give the registrant or applicant an opportunity for a hearing before an Administrative Law Judge in order to contest the proposed action. *See* 21 U.S.C. § 824(c). Under 21 C.F.R. § 1301.36(i), provided that a current DEA registrant submits his renewal or modification application in a timely manner, an order to show cause in administrative revocation proceedings will not void the registration. The registration remains in effect until the DEA Deputy Administrator issues her final order in accordance with 21 U.S.C. § 824(c).

Harris charges that the DEA issued the show cause order because he "attempted to amend his suit in the [United States District Court for the Northern District of Texas] . . . to include the charges [he] now presents to this court." Amended Complaint, § 13, ¶ 36.

Harris commenced this lawsuit on October 13, 2006. In Counts I, II, and IV of the amended complaint, Harris seeks compensatory damages and $50 million in punitive damages, pursuant to 42 U.S.C. § 1983, the Arkansas Civil Rights Act, and *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S. Ct. 1999 (1971). In Count III, Harris charges Defendants with conspiring to deprive him of equal protection of the law in violation of 42 U.S.C. § 1985, and he seeks $2.2 million in compensatory damages and $50 million in punitive damages. Finally, although Counts I through IV include no separate request for injunctive relief, elsewhere in the amended complaint Harris requests "an immediate injunction against DEA to prevent the revocation of its license."[5]

---

[5] Harris has not filed a motion for emergency or preliminary injunctive relief. *See* Local Rule 7.2(e)("Pretrial motions for temporary restraining orders [and] motions for preliminary injunctions . . . shall not be taken up and considered unless set forth in a separate [motion] accompanied by a separate brief.").

### III. Analysis

#### 42 U.S.C. § 1983

Section 1983 provides a remedy when a person "acting under color of state law" deprives an individual of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983.[6] Defendants argue that Harris fails to state a claim under § 1983 because they were acting within the scope of their employment as *federal* agents at all times during the alleged incidents. The Court agrees, and therefore finds that Harris fails to state a claim under § 1983 or the ACRA.[7]

#### *Bivens*

In *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S. Ct. 1999 (1971), the Supreme Court recognized an implied cause of action for monetary damages against federal government officials sued in their individual capacities for constitutional violations. *See Carpenter's Produce v. Arnold*, 189 F.3d 686, 687 (8th Cir.1999). Defendants assert that Harris fails to state a *Bivens* claims because (1) most of Harris's allegations fall outside the applicable

---

[6] Similar to § 1983, the Arkansas Civil Rights Act provides a cause of action against persons who, under color of any statute, ordinance, regulation, custom, or usage of the State of Arkansas, subjects any person to a violation of rights secured under the Arkansas Constitution. *See* Ark. Code Ann. § 16-123-105 (a).

[7] According to the complaint allegations, Harris seeks relief for conduct committed by defendants while acting under the color of their authority as federal officers. Although Defendant Anderson was employed by the Arkansas State Police, he committed the complained-of conduct in his capacity as a DEA federal drug task officer. The DEA is authorized by statute to enter task force agreements with State and local law enforcement agencies for cooperative enforcement and regulatory activities concerning traffic in controlled substances. *See* 21 U.S.C. §837(a)(7). During a period of assignment to a task force, an employee of a State or local government "on detail to a Federal agency . . . is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal tort liability statute . . . " 5 U.S.C. § 3374(c). Accordingly, Harris's claims against Anderson come under *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388 (1971).

statute of limitations; (2) Defendants sued in their individual capacities are entitled to qualified immunity because Harris fails to allege a constitutional violation; and (3) Harris's official capacity claim against the Administrator of the DEA is precluded under the doctrine of sovereign immunity.

For the reasons that follow, the Court finds that (1) Defendants Gadd, Neel, Probasco, Anderson, and LaChance are entitled to qualified immunity because none of Harris's allegations rise to the level of a constitutional violation[8] and (2) Harris's official capacity claim against the Administrator of the DEA must be dismissed under the doctrine of sovereign immunity.  Given these findings, the Court will not address whether Harris's claims are timely.

### Fifth Amendment Due Process

Harris alleges that Defendants deprived him of property without due process of law.  To prevail with a due process claim, whether procedural or substantive, Harris must show that Defendants deprived him of a protected property or liberty interest.[9]  *See Gordon v. Hansen,* 168 F.3d 1109, 1114 (8th Cir. 1999)(citing *Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453,

---

[8]Two questions guide the determination of whether Defendants are entitled to qualified immunity as to claims brought against them in their individual capacity.  The first is whether the facts, viewed in a light most favorable to Harris, show that Defendants' conduct violated a constitutional right.  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001).  If the answer is no, Defendants are entitled to qualified immunity, and Harris's claims cannot proceed.  *See id.*  If, however, a constitutional right may have been violated, the Court must inquire whether the right was clearly established.  *Id.*

[9]Defendants describe Harris's claim as coming under the Fifth Amendment's Takings Clause, which provides that private property shall not be taken for public use without just compensation.  *See* U.S. CONST. amend. V.  Even if Harris's due process claim is really a takings claim in disguise, he must still identify a property interest cognizable under the Fifth Amendment.  *See Hawkeye Commodity Promotions, Inc. v. Vilsack* 486 F.3d 430, 439 (8th Cir. 2007)(citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-03, 104 S.Ct. 2862 (1984)).

1456 (8th Cir.1996)). Harris contends that Defendants' accomplished a "*de facto* revocation" of his DEA registration, which has cut off his ability to sell and distribute regulated products. However, Harris acknowledges that his DEA registration has not been revoked or suspended and he alleges no facts explaining how the current status of his registration cuts off his ability to distribute regulated products. The only conceivable basis for a deprivation of property claim under the facts pled is the revocation of Harris's state-issued license to distribute pseudoephedrine.[10]

"Protected property interests are created by state law, but federal law determines whether the interest rises to the level of a constitutionally-protected property interest." *Ellis v. City of Yankton*, 69 F.3d 915, 916 (8th Cir. 1995). State law creates a property interest in a license only if the state lacks discretion and must issue a license to an applicant who complies with the statutory requirements. *See Carolan v. Kansas City*, 813 F.2d 178, 181 (8th Cir. 1987). Here, state law gives the ASBP broad discretion to grant or deny a license for the distribution of controlled substances, and the ASBP reserves the right to deny a license if it determines that granting a license would not be in the public interest. *See* Arkansas Board of Pharmacy Regulation 08-00-0006. The Court finds, as a matter of law, that a license issued by the ASBP to distribute controlled substances amounts to a privilege and grants no protected property rights. See *Chance Management, Inc. v. South Dakota*, 97 F.3d 1107, 1119 -1120 (8th Cir. 1996)*(*"Public licensure is not generally contractual in nature: a license neither grants the licensee a property right nor creates a mutual obligation."); *see also Blum v. Ford*, 194 Ark. 393,

---

[10]According to Harris, Gadd encouraged the ASBP to bring charges against him, and he provided false testimony that, according to Harris, "substantially swayed the minds of the [ASBP] Board members . . . " Amended Complaint, ¶ 77.

107 S.W.2d 340(1937)(holding that a license to sell liquor is a privilege to do what would otherwise be a violation of criminal law, which may be extended, limited, or denied without violating any constitutional right).

In addition to Harris's failure to allege the existence of a protected property or liberty interest, he alleges no facts indicating that he was denied notice, a hearing, or any other pre-deprivation protections in connection with the ASBP's decision. In fact, a copy of the ASBP's findings of fact and conclusions of law submitted by Harris indicates that he was represented by counsel at the February 14, 2006 hearing. *See* docket entry #16, Ex. A. Additionally, it appears from the record that Harris is currently receiving a post-deprivation hearing by way of appeal. *See* docket entry #16, Ex. B. In sum, the Court finds that Harris has failed to allege a cognizable claim under the Fifth Amendment.

### **First Amendment Retaliation**

Harris charges that the DEA issued a show cause order in retaliation for his attempt to pursue the same claims he asserts in this case in a separate action he commenced in the Northern District of Texas. A plaintiff who seeks relief from a valid adverse regulatory action on the ground that it amounted to unconstitutional retaliation of First Amendment-protected activity must show "'that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted [and] that the government's discriminatory selection of him for prosecution was based upon ... his exercise of his first amendment right . . . . '" *Osborne v. Grussing*  477 F.3d 1002, 1006 (8th Cir. 2007)(citing *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir.1978)(citing *United States v.*

*Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)).

Here, Harris makes no allegations that the DEA selectively enforced 21 U.S.C. § 824, which provides that DEA registration to distribute a controlled substance may be revoked for enumerated reasons, including a finding that the registrant has had his state license suspended, revoked, or denied. *See* 21 U.S.C. § 824(a)(3). Furthermore, Harris alleges no facts indicating that any of the named defendants had a personal role in the issuance of the show cause order. *See Schutterle v. U.S.,* 74 F.3d 846, 848 (8th Cir. 1996)(stating that a "*Bivens* defendant as named individuals must have been *actively involved* in the alleged constitutional violation to support *Bivens* liability"). The Court finds that Harris has failed to allege facts sufficient to support a First Amendment violation.

### Official Capacity Claim

Harris sues Karen Tandy, the former Administrator of the DEA, in her official capacity only.[11] Harris's claim official capacity claim against the Administrator is equivalent to a claim against the DEA and is barred under the doctrine of sovereign immunity. *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir.1998)(stating that a claim against a federal government official in his official capacity is suit against United States, and a *Bivens* action cannot be prosecuted against United States because of sovereign immunity).

### 42 U.S.C. § 1985

Defendants argue that Harris fails to state a conspiracy claim under § 1985, and the Court agrees. To state a claim under the equal protection provisions of the first part of § 1985(3), a plaintiff must allege that the defendants had an agreement to violate his or her civil rights and

---

[11]Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michele Leonhart, the acting DEA administrator, is automatically substituted as a party for her predecessor.

that the conspiracy was fueled by some class-based, invidiously discriminatory animus. *See Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th 1996)(citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 758 (1993)).

Here, Harris makes no allegations indicating an agreement between the defendants to violate his constitutional rights, nor does he allege facts showing that Defendants' actions were motivated by class-based discriminatory animus. Additionally, because Harris fails to state a claim for the violation of his civil rights, he cannot state a claim for civil conspiracy. *See Federer v. Gephardt* 363 F.3d 754, 757 -758 (8th Cir. 2004)("Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights. The source of the right or laws violated must be found elsewhere.").

### Claims for Injunctive Relief

Harris seeks an injunction against the DEA to prevent the revocation of his registration. The CSA contains a specific jurisdictional provision, 21 U.S.C. § 877, which provides:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

21 U.S.C. § 877. Because § 877 prescribes finality as a prerequisite for judicial review and confers exclusive jurisdiction for review of final orders on the United States Courts of Appeals, this Court lacks jurisdiction to review the DEA's non-final decision to issue a show cause order

regarding Harris's registration[12] or to enjoin the DEA from revoking the registration.  In the event that the DEA revokes Harris's registration, he may seek judicial review as provided under § 877.

## IV. Conclusion

For the reasons stated, Defendants' motion to dismiss (docket entry #35) is GRANTED. There being no issues remaining for trial, pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 16TH DAY OF JANUARY, 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[12]Two conditions must be satisfied for an agency action to be final. "'First, the action must mark the consummation of the agency's decisionmaking process-it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 813 (8th Cir. 2006)(quoting *Bennett v. Spear*, 520 U.S. 154, 177-78, 117 S.Ct. 1154 (1997)).